# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 26, 2013

## STATE OF TENNESSEE v. JAMES A. ADKINS

**Appeal from the Criminal Court for Sullivan County**
**No. S60646      Robert H. Montgomery, Judge**

---

**No. E2012-02615-CCA-R3-CD - Filed July 24, 2013**

---

The Defendant, James A. Adkins, entered a best-interest plea of guilt to driving while declared a motor vehicle habitual offender, failing to obey a traffic-control device, violation of the financial responsibility law, and reckless aggravated assault. The trial court ordered the Defendant to serve an effective sentence of six years in the Tennessee Department of Correction. The Defendant appeals, asserting that the trial court erred when it denied his request for alternative sentencing. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

William A. Kennedy, Blountville, Tennessee, for the appellant, James A. Adkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Barry Staubus, District Attorney General; and Amy Hinkle, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION
## I. Background and Facts

A Sullivan County grand jury indicted the Defendant for driving while declared a motor vehicle habitual offender, failure to obey a traffic-control device, violation of the financial responsibility law, and reckless aggravated assault. On September 4, 2012, the Defendant entered a best interest plea of guilt to each of the indicted offenses. The trial court sentenced the Defendant to six years as a Range II offender. A transcript of the guilty plea hearing is not included in the record on appeal. The presentence report contains the

following recitation of the affidavit of complaint against the Defendant:

> On 12-30-11 at 19:34 hours, I responded to a motor vehicle crash on N. Eastman Rd @ Jack White Dr. Upon arrival I worked the crash, see KPD Report #11-023008. While working the crash it was determined the driver of the Chevrolet Blazer that was involved in the crash, ran the red light, had no vehicle insurance and had been declared a habitual motor vehicle offender in Tennessee. A check of the driver's license, confirmed that [the Defendant] is revoked and been declared a habitual offender. During the crash, [the Defendant] ran the red light on N. Eastman Rd @ Jack White Dr and crashed into another vehicle causing injury to a passenger in the other vehicle. [The Defendant] admitted to running the red light and did apologize to officers on scene. [The Defendant] was arrested and transported to city jail.

The Defendant provided the following statement, on September 20, 2012, for the presentence report:

> Friend of mine called me more like a brother to me. To come and pick him up to take to motel or he was going to go to jail. Stopped at red light. Was looking in rearview mirror talking to kid. Foot slipped off break [sic]. Stomped the gas. Started to turn and froze. I try to stick around to make sure every one was alright. Moved my car. But officer wouldn't let me to stay to make sure everything is ok. Ask officer if I could call to see if every one was alright. They said no. They said not to have contact with them. I felt very bad because it happened. And I am very sorry about it. Still feel bad about it.

On November 30, 2012, the trial court held a hearing to determine the manner of service of the six-year sentence. The parties submitted the presentence report and presented no further evidence. The Defendant's criminal record contained in the presentence report spans seven pages. The Defendant's first offense was in 1985 when the Defendant was nineteen years old. He received his first driving under the influence conviction in 1986, at age 20. Between 1987 and 1994, the Defendant was convicted of sixteen offenses including: marijuana possession, public intoxication, driving with a revoked license, and driving under the influence-second offense. On May 13, 1994, the Defendant was declared a motor vehicle habitual offender. Thereafter, the Defendant continued to accumulate convictions for drug and alcohol-related offenses such as public intoxication and marijuana possession. The Defendant was also convicted on three occasions, in 1997, 1998, and 2002, of driving while under the restrictions of the Motor Vehicle Habitual Offenders Act. In connection with the 2002 violation, the Defendant was convicted of driving while under the influence. The

presentence report also reflects the Defendant's violation of probation on three occasions: January 10, 2008, July 9, 1998, and October 3, 1997. After the October 3, 1997 probation violation warrant was issued, the Defendant absconded from probation.

The Defendant requested the trial court order his sentence to be served in community corrections. After considering the evidence, the presentence report, and the principles and purposes of sentencing, the trial court denied the Defendant an alternative sentence and ordered him to serve his sentence in the Tennessee Department of Correction.

In pertinent part, the trial court stated the following:

[The] enhanc[ement] factors, primarily because of the extensive criminal history outweighed the mitigating factors. He does have a long history of criminal behavior, . . . past efforts of rehabilitation have failed. And the real problem in this case is not that it was just one of those things where he was out driving and . . . didn't have a license because he'd been [declared] a habitual offender. I mean this was a situation where he's had three prior convictions for being a habitual offender. There was a crash in this case, an individual was hurt and I mean he's had - - - the statute was set up for those individuals that are more serious offenders to comply and it appears to me that he's just not somebody that's going to comply with what the Court asks him to do and an order not to drive is a pretty straightforward order and it wasn't like this was an emergency or anything like that. So in my opinion, based on all those factors, that it's not appropriate for me to place him on probation or alternative sentencing so I'm going to order him to serve his sentence, 6 years.

It is from this judgment that the Defendant appeals.

## II. Analysis

As we previously noted, the Defendant failed to include a transcript of the guilty plea submission hearing in the record on appeal. It is the Defendant's duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to the issues which form the basis of the appeal." Tenn. R. App. P. 24(b). "[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the abuse of discretion with a presumption of reasonableness standard adopted in *Bise*." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012); *see State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). "[T]he mere fact that the transcript of the submission hearing was not made a part of the record on appeal should not preclude review." *Id.* Tennessee Rule of

Appellate Procedure 24(e) authorizes this Court to order supplementation of the record where necessary. Not every case in which an appellant fails to provide a plea submission hearing transcript necessitates supplementation. *Id.* Rather, supplementation should be considered on a case-by-case basis and "should be ordered only if the record is otherwise inadequate to conduct a meaningful appellate review on the merits of the sentencing decision." *Id.* If the appellate record "is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court." *Id.*

While inclusion of the guilty plea submission hearing transcript is preferable, based upon the specific facts of this case, we conclude that the record is adequate to afford meaningful review under the *Bise* standard without supplementation of the guilty plea transcript. Accordingly, we turn to review the issue presented by the Defendant on its merits.

The Defendant argues that the trial court erroneously denied the Defendant alternative sentencing. While he acknowledges his "significant number" of prior criminal convictions, he asserts that his last criminal conviction was in 2006. He further asserts that his gainful employment since 2001 qualifies him as a proper candidate for alternative sentencing. The State responds that the trial court properly considered the Defendant's lengthy history of criminal activity and substance abuse in denying alternative sentencing. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Bise*, 380 S.W.3d at 682. A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise,* 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Recently, our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion

standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *Caudle*, 388 S.W.3d at 278-79. We are also to recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2010).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2010) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A. § 40-35-102(6) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

The Defendant, a Range II offender, is not presumed a favorable candidate for alternative sentencing, and he has not carried his burden of demonstrating that he is a proper candidate for alternative sentencing. The Defendant's criminal history began at age nineteen and continued to his current offense age of forty-six. The Defendant has previously failed to comply with the conditions of probation sentences and once absconded from a probation sentence. The Defendant, after being declared a motor vehicle habitual offender, drove a vehicle while uninsured and unlicensed, ran a red light, and hit another vehicle. A passenger in the other vehicle was injured as a result of the Defendant's conduct. The record supports the trial court's determination that confinement is necessary based on the Defendant's lengthy criminal history. The trial court also properly concluded that confinement is necessary to avoid depreciating the seriousness of these offenses and because of the Defendant's repeated failures to comply with previous sentences involving release into the community.

Accordingly, the trial court followed the purposes and principles of the Sentencing Act when it applied a sentence within the appropriate sentencing range and the trial court acted within its discretion when it denied alternative sentencing. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE